UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PRINCIPAL NATIONAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| vs. | ) ) ) | Case No. 4:19CV2360 JCH |
| DONNA T. ROTHENBERG, | ) ) | |
| Defendant/Counterclaimant, | ) ) | |
| vs. | ) ) ) | |
| ROBERT W. BAGBY and BERTHEL FISHER & COMPANY FINANCIAL SERVICES, INC., | ) ) ) ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff/Counterclaim Defendant Principal National Life Insurance Company's Motion to Dismiss Count III of Defendant's Counterclaim pursuant to F.R.Civ.P. 12(b)(6), filed November 27, 2019. (ECF No. 13). The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

For many years, up to and including at the time of Robert P. Rothenberg's ("Decedent") death, Counterclaim Defendant Robert W. Bagby ("Bagby") was Decedent and Donna T. Rothenberg's ("Rothenberg") financial advisor and financial planner. (Counterclaim, ¶ 7). Bagby

---

[1] The Court's background section is taken from Donna T. Rothenberg's Counterclaim, to which not all Counterclaim Defendants have filed an Answer.

— 1 —

was a representative and agent of Counterclaim Defendant Berthel Fisher & Company Financial Services ("Berthel Fisher"). (*Id.*, ¶ 9).

For several years, Decedent maintained a term life insurance policy on his life, procured for him by Bagby from Jackson National Life Insurance Company, and providing a death benefit of $1,500,000 (the "Jackson National Policy"). (Counterclaim, ¶ 11). Rothenberg was the primary beneficiary under the Jackson National Policy. (*Id.*).

In or before March, 2019, Decedent and Bagby received notice from Jackson National that its policy would lapse on or about March 14, 2019, and that if Decedent wished to renew the policy for another year, the annual premium would be approximately $15,000, which represented a large increase over prior premiums. (Counterclaim, ¶ 12). Decedent requested that Bagby seek alternative life insurance, at a cost in the range of the premium he previously was paying on the Jackson National Policy. (*Id.*, ¶ 13).[2] Bagby ultimately found, recommended and applied for (on Decedent's behalf) a policy from Counterclaim Defendant Principal National Life Insurance Company ("Principal National"), with a death benefit of $250,000 and an effective date of April 5, 2019. (*Id.*, ¶ 14 and Principal National's Answer thereto). Decedent intended to pay the premiums by authorizing Principal National automatically to withdraw the premium payments from his and Rothenberg's checking account. (Counterclaim, ¶ 15).

Bagby arranged for Decedent to come to his office on April 26, 2019, to sign the paperwork necessary to authorize Principal National to withdraw the premium payments. (Counterclaim, ¶ 16). Decedent appeared as scheduled, and according to Rothenberg, upon leaving Bagby's office Decedent believed he had done everything required to authorize Principal National to withdraw the

---

2 Decedent recognized that the death benefit on any new policy likely would be less than that payable under the Jackson National Policy. (Counterclaim, ¶ 13).

initial premium payment from their bank account. (*Id.*, ¶ 17).³ In fact, however, Bagby had neither obtained a voided check from Decedent nor inserted the account and routing information into the documentation, as required to effectuate the drawing of the initial premium payment from Decedent's checking account. (*Id.*, ¶ 18 and Principal National's Answer thereto).

Later in the day on April 26, 2019, Bagby telephoned Decedent and informed him of the omission. (Counterclaim, ¶ 20). Bagby requested that Decedent return to his office with a voided check. (*Id.*). At the time Decedent was miles away from Bagby's office; he thus informed Bagby that he would bring the check the following Monday, April 29, 2019. (*Id.*). Unfortunately, Decedent died late in the afternoon of April 26, 2019, before he could bring the check to Bagby's office. (*Id.*, ¶ 21).

On or about June 10, 2019, Rothenberg (through counsel) submitted a claim for death benefits to Principal National. (Counterclaim, ¶ 22 and Principal National's Answer thereto). Rothenberg's claim stated in relevant part as follows:

> While there may be some question as to whether or when the premium on the Policy was paid, as discussed below, [Decedent] must be deemed to have tendered payment of the premium before his death, and the Policy must be regarded as being in effect. As a starting point, a letter dated April 15, 2019, a copy of which is enclosed, confirmed that [Decedent] authorized Principal to withdraw the premium for the policy directly from his bank account.
>
> Further, on the morning of April 26, 2019, [Decedent] appeared at Mr. Bagby's office and signed an ACH form authorizing Principal to withdraw the Policy premium from his bank account. I understand from Mr. Bagby that he was supposed to obtain a voided check from [Decedent] in connection with the ACH form at the time [Decedent] signed the form, but Mr. Bagby omitted to do so.
>
> In any event, [Decedent] must be deemed to have paid the premium on the Policy at least by the morning of April 26, 2019, when he appeared at Mr. Bagby's office and signed the ACH form. [Decedent] went to Mr. Bagby's office to complete

---

3 The Agreement/Acknowledgement of Delivery form signed by Decedent provided that policy coverage was not effective until "[a] policy issued on this application has been physically delivered to and accepted by the owner and the first premium paid." (*See* ECF No. 1-2, P. 1). According to Rothenberg, Decedent believed he had made the first premium payment as of the date of his meeting in Bagby's office. (Counterclaim, ¶ 17).

˘ 3 ˘

the paperwork necessary to authorize Principal to withdraw the Policy premium from his bank account, signed the ACH form presented to him, and was allowed to leave Mr. Bagby's office understanding that he had done everything asked of him by Principal, through its agent, Mr. Bagby, to effect payment of the Policy premium.

Finally, insofar as Principal may seek to escape its responsibility to pay the death benefit due under the Policy on the premise that the premium never was paid, because Mr. Bagby omitted to obtain a voided check from [Decedent], any effort to do so would be unavailing. Principal is responsible for the acts and omissions of Mr. Bagby, as Principal's agent. On that basis, Principal would be liable to pay the death benefit under the Policy in any event.

(*See* ECF No. 1-5, PP. 1-2).

In a letter dated June 24, 2019, Principal National denied Rothenberg's claim, as follows:

Although [Decedent] marked that he wanted money withdrawn from this checking account, he failed to either provide a voided check, or his bank routing number and the account number. That information is clearly necessary for coverage to become effective since an asterisk appears next to both the bank routing number and account number blanks on the [Payment Authorization for Electronic Fund Transfers] form.

Given these facts, coverage never became effective under the policy at issue since consideration had not been received as of the moment [Decedent] died later in the day on April 26, 2019.

With respect to your claim that Principal is responsible for the actions of Mr. Bagby, it should be noted that Mr. Bagby is **not** an agent of Principal; he is an insurance broker and is contracted as such with Principal. The Missouri Supreme Court has recognized that "[w]hile an agent represents the insurer, 'an insurance broker, unless otherwise authorized and provided, represents the insured and, unless otherwise shown by the evidence, is to be regarded as the agent of the insured.' *Gilbert v. Malan*, 100 SW2d 606, 612 (1937)." *Emerson Electric Co. v. Marsh & McLennan Cos.*, 362 SW3d 7, 12 (2012). As such, Principal is not responsible for the acts or omissions of broker Bagby.

(*See* ECF No. 1-6, P. 2).

Rothenberg's attorney submitted follow-up correspondence to Principal National on July 29, 2019, in which he reiterated her assertion that Bagby was acting as an agent of Principal National with respect to the circumstances underlying Rothenberg's claim. (*See* ECF No. 1-7, P. 3). He ended the letter as follows:

> Absent receiving a positive response from Principal within the next ten days, Mrs. Rothenberg will have no alternative but to file suit against Principal. If Mrs. Rothenberg is forced to initiate legal action in this matter, the relief sought will not necessarily be limited to the death benefit payable under the policy but will include any and all other amounts to which she is or may be entitled, including but not limited to interest, attorney's fees and damages for vexatious refusal to pay.

(*Id.*, P. 4).

On August 16, 2019, Principal National filed a Complaint for Declaratory Judgment and Relief in this Court. (ECF No. 1). As relief, Principal National requests that this Court "enter a judgment declaring that Term Life Insurance Policy No. 6778434 has never become effective as the conditions precedent as listed have never been met[4], releasing Principal National from any liability on claims brought under the Policy and any and all other relief this Court deems just and equitable…" (*Id.*, P. 6).

On October 21, 2019, Rothenberg filed her Answer, Affirmative Defenses and Counterclaim, adding as Counterclaim Defendants Bagby and Berthel Fisher. (ECF No. 8). As relevant here, in Count III of her Counterclaim Rothenberg asserts a claim for negligence against Principal National and Bagby. Specifically, Rothenberg alleges that in arranging for the issuance of the Policy to Decedent, "Bagby had a duty to use due care and exercise the degree of skill and care used by a reasonably prudent insurance agent acting under the same or similar circumstances", and that he breached that duty by: "(1) forgetting, neglecting or otherwise failing to obtain a voided check from [Decedent] during his visit to Bagby's office on April 26, 2019; (2) otherwise failing to make sure that he obtained from [Decedent] during his office visit on April 26, 2019 account number and routing information for his bank account and entering that information on the Principal National payment authorization documentation; and/or (3) otherwise failing to make sure that all conditions

---

[4] Principal National alleges the Policy never became effective because: "1) no premium payment was made at the time of delivery; 2) Principal National did not have a copy of a voided check from Decedent's bank account; and 3) Principal National lacked any bank account information from which to draw a premium payment." (Compl., ¶ 18).

precedent to the life insurance under the Principal National Policy being in full force and effect, including payment of the premium, were satisfied prior to [Decedent's] death." (*Id.*, ¶¶ 37, 38). With respect to Principal National, Rothenberg alleges as follows:

> In arranging for the issuance of the Principal National Policy to [Decedent], and for [Decedent's] payment of the initial premium for the Policy, Bagby was acting as the servicing producer and agent for Principal. Accordingly, Principal National and Bagby had a principal/agent relationship with respect to the policy, and Principal National therefore is jointly and severally liable with Bagby, under principles of respondeat superior, for Bagby's wrongful acts and omissions relating to the policy.

(*Id.*, ¶ 39).

As noted above, Principal National filed the instant Motion to Dismiss Count III of Defendant's Counterclaim pursuant to F.R.Civ.P. 12(b)(6) on November 27, 2019, claiming Rothenberg fails to plead "factual matter" rather than simple conclusions to support her claim for negligence against it. (*See* Principal National's Memorandum of Law in Support of its Motion to Dismiss Count III of Defendant's Counterclaim pursuant to F.R.Civ.P. 12(b)(6), P. 2).

## **STANDARD FOR MOTION TO DISMISS**

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

"Under Missouri law, a plaintiff suing for negligence must establish: '1) the existence of a duty by the defendant to protect the plaintiff from injury; 2) failure of the defendant to perform that duty; and 3) injury to the plaintiff resulting from the defendant's failure.'" *National Union Fire Ins. Co. of Pittsburgh v. Midwestern General Brokerage, Inc.*, Case No. 06-0782-CV-W-NKL, 2007 WL 1529011, at *5 (W.D. Mo. May 23, 2007) (quoting *Doyle v. Fluor Corp.*, 199 S.W.3d 784, 789 (Mo. App. 2006)). In its Motion to Dismiss, Principal National maintains Rothenberg cannot establish the existence of a duty on its part.

Before addressing Principal National's claim, the Court finds it helpful to delineate the difference between an insurance agent and an insurance broker.

> An insurance agent works for and acts as an agent for a particular insurer or insurers. By definition an insurance agent is ordinarily an agent of the insurer and not an agent of the insured….While an agent represents the insurer, an insurance broker, unless otherwise authorized and provided, represents the insured and, unless otherwise shown by the evidence, is to be regarded as the agent of the insured. When an insurance broker agrees to obtain insurance for a client, with a view to earning a commission, the broker becomes the client's agent and owes a duty to the client to act with reasonable care, skill, and diligence.

*Emerson Electric Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 7, 12 (Mo. banc 2012) (internal quotations and citations omitted). With these principles in mind, Principal National contends that at all relevant times Bagby was acting as Decedent's broker, rather than as Principal National's agent, and therefore Principal National had no duty to protect Decedent and/or Rothenberg from harm.

Although an insurance broker ordinarily is the agent of those for whom insurance is procured, "[t]here are rare occasions when a broker 'may be the agent of the insurer for a certain purpose and of the insured for another purpose.'" *National Union*, 2007 WL 1529011, at *5 (quoting *Electro Battery Mfg. Co. v. Commercial Union Ins. Co.*, 762 F.Supp. 844, 848 (E.D. Mo. 1991)). For example, a broker "may be the agent of the insured in taking and placing the application and of the [insurer] in the issuance and delivery of the policy and the collection of the premiums thereon." *Gilbert v. Malan*, 100 S.W.2d 606, 612 (Mo. App. 1937). "However, '[a]bsent some special condition or circumstance in a particular case [an insurance broker] is not the agent of the insuror (sic); and he may not be converted into an agent for the insurance company without some action on the part of the company.'" *National Union*, 2007 WL 1529011, at *5 (quoting *Travelers Indem. Co. v. Beaty,* 523 S.W.2d 534, 538 (Mo. App. 1975)).

Upon consideration of the foregoing, the Court finds it inappropriate to grant Principal National's Motion to Dismiss at this time. Instead, the Court will permit Rothenberg to engage in discovery, in an effort to establish that Bagby was in fact acting as Principal National's agent at the time of the events in question.[5]

---

5 Principal National remains free to renew its argument with respect to agency on summary judgment.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff/Counterclaim Defendant Principal National Life Insurance Company's Motion to Dismiss Count III of Defendant's Counterclaim pursuant to F.R.Civ.P. 12(b)(6) (ECF No. 13) is **DENIED**.

Dated this 8th Day of January, 2020.

                                             /s/ Jean C. Hamilton
                                             UNITED STATES DISTRICT JUDGE