UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PRINCIPAL NATIONAL LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff/Counterclaim Defendant, | ) ) |
| v. | ) ) Case No. 4:19-CV-2360 JCH ) |
| DONNA T. ROTHENBERG, | ) ) |
| Defendant/Counterclaimant, | ) ) |
| ROBERT W. BAGBY, | ) ) |
| Counterclaim Defendant. | ) |

## **MEMORANDUM AND ORDER**

This action arises out of a dispute over life insurance proceeds.  The matter is before the Court on the Motion for Partial Summary Judgment brought by Defendant and Counterclaimant Donna T. Rothenberg (Doc. 58), the Motion for Summary Judgment brought by Plaintiff and Counterclaim Defendant Principal National Life Insurance Company ("Principal") (Doc. 65), and the Motion for Summary Judgment brought by Counterclaim Defendant Robert W. Bagby ("Bagby") (Doc. 60).  Also before the Court are various *Daubert* motions to exclude the testimony of the parties' experts (Docs. 53, 55, and 63).   The motions are fully briefed and the matter is ripe for disposition.  For the following reasons, the Court will  grant the Motions for Summary Judgment brought by Principal and Bagby, and deny the Motion for Partial Summary Judgment brought by Rothenberg.

**I. Background**

Donna Rothenberg ("Donna" or "Rothenberg") is the widow of Robert Rothenberg ("Rob" or "Decedent"), who died of a heart attack at the age of 72 on the afternoon of April 26,

2019.  For approximately twenty years preceding 2019, Rob had maintained a $1.5 million term life insurance policy on his life, of which Donna was the primary beneficiary.  This policy was issued by Jackson National Life Insurance Company and was procured by Robert Bagby.  The Rothenbergs maintained a brokerage account at Bagby's employer, Berthel Fisher & Company Financial Services, Inc.[1]

The Jackson National policy came up for renewal in 2019, at which time the premium increased substantially, from a few thousand dollars annually to $5,007.50 per month, or approximately $60,000 annually, prompting Rob to let that policy lapse at the end of its term, which was April 14, 2019.  Rob initially decided that he would not replace the life insurance policy with another policy.  However, Bagby encouraged him to replace the policy on his life, as he was the primary income-earner in his household.

Rob requested that Bagby shop around for a new term life insurance policy with premiums that would be close to the amount Decedent had been paying for the Jackson National coverage prior to the premium increase.  Bagby subsequently found a ten-year term life insurance product with Principal that was available for a premium similar to the one Rob had been paying on the Jackson National policy.  On February 16, 2019, Rob completed the application for the Principal life insurance product, requesting term life coverage in the amount of $200,000.00.  Bagby submitted the application to Principal through a brokerage firm with which Bagby did business, The National Benefit Corporation ("TNBC").  In order for Bagby to arrange for Principal's sale of life insurance to Rob, the state of Missouri required that Bagby be

---

[1] The Rothenbergs met with Bagby yearly to discuss the investments they maintained.  Apart from these yearly meetings, Bagby met with the Rothenbergs only episodically.  During these meetings, Bagby did not discuss the Rothenbergs' insurance needs or plans with them.  Doc. 77 at 5.

appointed as a marketer for Principal in the state.  Accordingly, Bagby signed a broker contract, Form DD715, on March 1, 2019, which was signed by Principal on May 20, 2019.

On March 28, 2019, Rob was approved on a Non Tobacco/Super Preferred basis, and on April 1, 2019, Principal issued a $200,000.00 policy on Rob's life, bearing policy number 6778434.  Because Rob was approved on a preferred status, the premium on the policy was lower than expected.  Thus, Bagby investigated whether the coverage amount could be increased, and was informed that a policy in the amount of $250,000.00 could issue for a premium similar to the amount expected by Rob without any additional underwriting.  Rob opted to increase the face amount of the coverage provided by the Principal policy to $250,000.00, and Principal issued a revised policy on Rob's life, also with policy number 6778434, naming Donna as the primary beneficiary.

On the afternoon of April 23, 2019, Bagby received the $250,000.00 policy on Rob's life. On April 24, 2019, Bagby called Rob and left him a voicemail informing him that he had received the Principal Policy and associated paperwork, and they needed to schedule a meeting so that Rob could sign the necessary documents and provide Bagby with a check for the Policy premium of $2,580.06.  Doc. 77 at 12.  Bagby called Rob again on April 25, 2019, and again did not reach him, and left a message with Rob's staff at his dental practice requesting that Rob call him back.  Rob called Bagby on the afternoon of April 25, 2019, and arranged to come to Bagby's office on April 26, 2019, to execute the Principal Policy.  Rob arrived at Bagby's office at approximately 11:30 on the morning of April 26, 2019.

At that meeting, Bagby provided to Rob the forms that needed to be completed and executed in connection with the Principal Policy.  Rather than paying the premium by check, Rob decided to authorize having the premium amount withdrawn from his bank account.  When

he arrived at Bagby's office, Rob signed all the documents needed for the execution of the Principal Policy, including an Electronic Funds Transfer ("EFT") Form. The EFT Form permitted Principal to debit the premium payment from a designated bank account. The EFT Form stated that the signatory could either "Complete Your Bank Information Below, or Submit [a] Voided Check." The EFT Form also noted that Principal would be "unable to draw funds if any of the required fields . . . are left blank [or] incomplete." After signing the forms, Rob left Bagby's office to go on a bike ride.

Shortly after Rob left Bagby's office, Bagby noticed that Rob had not completed the bank information required on the EFT Form with his ACH Routing Number, nor had he attached a voided check. Accordingly, Bagby called Rob[2] to let him know that he had left without providing a voided check or otherwise completing the EFT Form. Rob told Bagby that he was on a bike ride and would come by on the following Monday. Bagby cautioned Rob that without the premium payment, his coverage was not in force. Later that same day, Rob suffered a fatal heart attack.

Principal subsequently denied Rothenberg's claim for the Policy proceeds, having determined the Policy had never become effective and Decedent was not covered under the Policy at the time of his death. As a basis for the denial of her claim, Principal explained that a policy does not become effective until the first premium payment is made, and the payment for the policy was never made. Rothenberg's attorney responded, threatening litigation for the amount of the Policy benefits as well as damages for vexatious refusal to pay.

---

[2] The Court recognizes that Bagby, in his contemporaneous notes prepared that day, indicates that he called Rob within approximately 30 minutes of him leaving the office. Rothenberg asserts that it must have been more than 30 minutes, as Rob had time to drive home, change clothes, perform some tasks around the house, drive to the Katy Trail, and begin riding his bicycle. Rothenberg asserts that the potential difference in time lapsed between Rob's departure and the phone call is a genuinely disputed material fact, but the Court does not find it material to the claims in this matter.

Principal filed this declaratory judgment action on August 16, 2019, seeking a declaration that the Policy never became effective because a required condition precedent (*i.e.*, payment) was never met, and that Principal is released from any liability on claims brought under the Policy.  On October 21, 2019, Rothenberg filed a Counterclaim against Principal and Bagby, asserting claims for breach of contract, vexatious refusal, and negligence against Principal, and two negligence claims against Bagby, one in his capacity as insurance broker, and the other in his capacity as financial advisor.

Rothenberg filed a motion for partial summary judgment in her favor with respect to Principal's Complaint seeking a declaratory judgment as to its non-liability on the policy. Bagby.  Doc. 58.  Bagby filed a motion for summary judgment in his favor on both of Rothenberg's counts of negligence filed against him.  Doc. 60.  Principal filed a motion for summary judgment in its favor on its complaint and on all counterclaims filed against it.  Doc. 65.

**II.  Summary Judgment Standard**

The standard applicable to summary judgment motions is well settled.  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013).  The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quotation marks omitted).  "On a motion for summary judgment, 'facts

must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted)).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, only "disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The standard does not change when the parties file cross-motions for summary judgment. In such cases, "the court 'must evaluate each party's motion on its own merits taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Lakeside Roofing Co. v. Nixon*, 4:10CV1761 JCH, 2012 WL 709276, at *4 (E.D. Mo. Mar. 5, 2012) (quoting *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2nd Cir.1993).

**III. Discussion**

In this case, federal jurisdiction is based on diversity of citizenship. Accordingly, the court applies the substantive law of Missouri, the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, Missouri law governs this insurance contract. *Secura Ins. v. Horizon Plumbing, Inc*. 670 F.3d 857, 861 (8th Cir. 2012). This Court is bound, therefore, by the decisions of the Missouri Supreme Court regarding issues of substantive state law. *Owners Ins. Co. v. Hughes*, 712 F.3d 392, 393 (8th Cir. 2013). Decisions by the Missouri Court of Appeals may be used as "an indication of how the Missouri Supreme Court may rule," but the Court is not bound to follow these decisions. *Id*.

6

The interpretation of an insurance policy is a question of law, and "[t]he general rules for interpretation of contracts apply to insurance policies." *Progressive Cas. Ins. Co. v. Morton*, 140 F. Supp. 3d 856, 860 (E.D. Mo. 2015). "Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007) (en banc). In construing the terms of an insurance policy, Missouri courts apply "the meaning an ordinary person of average understanding would attach if purchasing insurance, and resolve[ ] ambiguities in favor of the insured." *Dutton v. Am. Family Mut. Ins. Co.*, 454 S.W.3d 319, 322 (Mo. 2015). "If the policy's language is unambiguous, it must be enforced as written." *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 217 (Mo. 2014). "Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Todd*, 223 S.W.3d at 163. Finally, a court must not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." *Id.*; *see also Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. 1991) (en banc).

<u>The Insurance Policy and Related Documents</u>

The relevant portions of the Agreement and Acceptance of Delivery Form (Part D) to the Principal application, which was signed by Decedent, and which by its terms is part of the insurance policy state as follows:

> **When Policy Coverage Becomes Effective:** I understand and agree that if a policy is issued as applied for **with a premium deposit paid**, policy coverage will become effective as of issuance. The Company agrees to pay any proceeds pursuant to policy terms subject to the acceptance of the proposed owner and signing of Part D, if applicable.

7

    I understand and agree that if a policy is issued as other than applied for **or without a premium deposit** (C.O.D.), then policy coverage is not effective and the Company shall incur no policy liability unless:
1)     A policy issued on this application has been physically delivered to and accepted by the owner **and the first premium paid**; and
2)     At the time of such **delivery and payment**, the person to be insured is actually in the state of health and insurability represented in the application, medical questionnaire, or amendment that becomes a part of this application; and
3)     The Part D of the Acknowledgement of Delivery form is signed by me and the Proposed Insured (if different than me) and dated at delivery.

If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy data pages.

    ***

The EFT Form states that:

FOR LIFE NEW ISSUE POLICIES ONLY
NOTE:  We are unable to draw funds **if any of the required fields marked with an asterisk (\*)[3] are left blank, incomplete**, or if this form is not signed.  Any Conditional Receipt **coverage will be void**.

    ***

The Policy states that proceeds are payable only if the insured died "while the Policy was in force."  Doc. 1-1 at 2.  The Effective Date of the Policy, also per its plain terms, is the date on which all requirements for issuance of the policy have been met.  *Id*. at 6.   The Policy also states that the "first premium must be paid in advance of the policy becoming effective."  *Id*. at 7.  Further, the Policy explicitly provides that there is no grace period allowed for payment of the first premium.  *Id*.

To establish coverage under a life insurance policy under Missouri law, the insured must show "(1) issuance and delivery of the policy; (2) payment of the premium; (3) a loss caused by

---

[3] The fields marked with an asterisk include the spaces for banking information, including ACH Routing Numbers, Bank Routing Numbers, and Account Numbers, all of which were left blank on the ECF form signed by Mr. Rothenberg.

a peril insured against; and (4) notice and proof of loss to the insurer." *Valentine-Radford, Inc. v. Am. Motorists Ins. Co.*, 990 S.W.2d 47, 51 (Mo. Ct. App. 1999). Only payment is at issue in the present case, more specifically, whether payment of the premium was properly made before the Decedent's death such that the policy became effective.

Principal argues that Decedent failed to pay the first premium, and, per the plain language of the Policy and Part D of the application, the Policy never became effective. Principal asserts that according to the Policy itself, and in accordance with Missouri law, the prospective insured's payment of the first premium is a condition precedent to coverage, which "must be performed or occur, after the contract has been formed, before the contract becomes effective." *Cosky v. Vandalia Bus Lines*, 970 S.W.2d 861, 865-866 (Mo. Ct. App. 1998). Principal maintains that because Decedent did not satisfy this condition precedent before his death, there was no coverage on his life when he died, and thus, it had no obligation to pay the Policy's death benefits upon his demise. Because of this, Principal argues that it is entitled to summary judgment in its favor on Rothenberg's breach of contract claim and on its declaratory judgment complaint. Principal further argues that it is entitled to summary judgment on Rothenberg's vexatious refusal claim, as Missouri courts have held that there can be no vexatious refusal claim where the loss at issue was not covered under the policy, citing to *McDonough v. Liberty Mut. Ins. Co.*, 921 S.W.2d 90 (Mo. Ct. App. 2016).

Rothenberg seeks to avoid the plain language of the Application and the Policy by pointing to the fact that Rob signed an EFT Form, at which time she argues the Policy became effective, as the signing of the EFT Form equated to payment of the premium. Rothenberg contends that Rob "paid" the premium by signing the EFT Form, and that the term "paid" does not require that the money be received by Principal. Rothenberg further argues that even if

9

signing the EFT Form did not constitute actual payment of the initial premium, it nonetheless constituted substantial performance of the payment requirement sufficient to place the Policy in force. Finally, Rothenberg argues that, in any event, she provided the missing banking information to Principal within six days after the date on which Rob died. Accordingly, Rothenberg asserts that she is entitled to judgment against Principal on its declaratory judgment claim, as well as on her claims against Principal for breach of contract and vexatious refusal to pay.

      Principal counters that Decedent merely signed, but did not complete, the EFT Form. He left the section for providing bank information, including bank routing numbers and account numbers, entirely blank, and he did not attach a voided check, which would have included the required information. Principal further argues that the doctrine of substantial performance refers only to the performance of a contract, and does not apply to the satisfaction of conditions precedent to the enforceability of a contract. Principal also asserts that even if the substantial performance doctrine were applicable, there was no substantial performance here, because under Missouri law, "a party's performance under a contract is substantial if the deviation from the contract was slight and if the other party received substantially the same benefit it would have from literal performance." *Gundaker v. Templer*, 560 S.W.2d 306, 309 (Mo. Ct. App. 1977). Principal maintains that merely signing the EFT Form is not substantial performance, as Principal did not receive "substantially the same benefit" from an improperly completed form that lacked the crucial details required to obtain payment that it would have from literal performance, *i.e.*, being provided the details that would enable it to secure payment of the initial premium, or otherwise receiving payment.

The Court will not adopt Rothenberg's strained interpretation of the meaning of the word "paid."  The plain and unambiguous import of the relevant clauses requiring that the premium be "paid" before the Policy became effective is that such payment was a condition precedent to the Policy's effectiveness.  The Policy states that the effective date of the Policy is the date on which all requirements for issuance of a policy have been satisfied, that the "first premium must be paid in advance of the policy becoming effective," and that proceeds are only payable if the policy is in force and effective.  Doc. 1-1 at 7.  The language in the Policy and its accompanying application is unambiguous, and clearly requires payment of the initial premium as a requirement in order for the policy to become effective.

Also, while Decedent signed the EFT Form, he failed to provide his bank account information, which the form clearly indicated was required.  The EFT Form stated that "FOR LIFE NEW ISSUE POLICIES ONLY NOTE:  We are unable to draw funds **if any of the required fields marked with an asterisk (*)are left blank, incomplete**, or if this form is not signed.  Any Conditional Receipt **coverage will be void**."  The fields marked with an asterisk included the spaces for banking information, including ACH Routing Numbers, Bank Routing Numbers, and Account Numbers, all of which were not filled in on the EFT Form signed by Decedent.  Rothenberg characterizes this required information as minor details that Rob inadvertently omitted from the form.  However, the Court agrees with Principal that they constitute critical information, without which funds could not be drawn and no payment could be made.

Additionally, Decedent was aware that payment could not be effected if he left those fields blank, as the EFT Form stated that Principal would be unable to draw funds if any of the required information was left blank.  *Binkley v. Palmer,* 10 S.W.3d 166 (Mo. Ct. App. 1999)

11

("[A]bsent a showing of fraud, a party who is capable of reading and understanding a contract is charged with the knowledge of that which he or she signs."). Merely signing the EFT Form, without providing the information that would make withdrawal of funds possible, does not suffice as payment of the premium. Therefore, the Court concludes that payment of the initial premium, a condition precedent to effectiveness of the Policy, did not occur prior to Rob's death, and the policy was not in force when he died.

As to Rothenberg's argument that it was sufficient for her to have provided the missing bank account information after Rob's death, this too does not comport with the unambiguous terms of the Policy contract. First, the Policy explicitly provides that there is no grace period allowed for payment of the first premium. Additionally, the Policy and Part D provide that if the policy is issued "without a premium deposit (C.O.D.), then [the] policy coverage is not effective and [Principal] shall incur no policy liability unless" the premium is paid, and that at the time of such payment, "the person to be insured is actually in the state of health and insurability represented in the application." Rothenberg provided the information required to complete the EFT Form after Rob's death, at which time he was not in "the state of health and insurability represented in the application."

Furthermore, the Policy provides that it will pay insurance benefits only if the insured dies "while this Policy is in force." As explained *supra*, the policy could not have become effective until the initial premium was paid, and Rothenberg's attempt to effectuate payment occurred days after Rob's death. "[A]s a basic matter of contract law, it is unreasonable to assert that a life insurance policy may be taken out for a life that is no longer in existence. The subject matter of a life insurance policy is the life of the individual to be insured by that policy; without a life in existence at the time the contract comes into effect, there is nothing to which the contract

12

applies and thus no valid contract." *Dallas v. American General Life and Acc. Ins. Co.*, 858 F.Supp.2d 1019, 1024 (E..D. Mo. 2012) (citing *Cantu v. Jackson Nat'l Life Ins. Co.*, 579 F.3d 434, 441 (5th Cir. 2009) ("The essential foundation of a life insurance policy is the life of a human being."); *Rhodus v. Kansas City Life Ins. Co.*, 156 Mo. Ct. App. 281 (1911) ("[T]here can be no valid insurance upon the life of one already dead at the time when the contract becomes complete.").

Accordingly, because the Policy was not effective until payment of the initial premium, and Rothenberg's attempt at payment was not made until after the insured had died, she is not entitled to recover under the terms of the Policy. Rothenberg has failed to establish that Rob satisfied all conditions precedent to coverage, and the Policy was never effective. Principal, therefore, is entitled to summary judgment in its favor on Rothenberg's breach of contract claim.

In addition to her breach of contract claim, Rothenberg also asserts a claim for vexatious refusal to pay pursuant to Mo. Rev. Stat. § 375.420. To establish a claim for vexatious refusal to pay, she must prove: (1) she had an insurance policy with Principal; (2) Principal refused to pay; and (3) Principal's refusal was without reasonable cause or excuse. *See Dhyne v. State Farm & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006). Additionally, under Missouri law, vexatious refusal is derivative of a breach-of-contract claim. *See Aziz v. Allstate Ins. Co.,* 875 F.3d 865, 869 (8th Cir. 2017) (citing *Fischer v. First American Title Ins. Co.*, 388 S.W.3d 181, 184, 192 (Mo. App. 2012); Mo. Rev. Stat. § 375.296 (damages for vexatious refusal to pay are awarded "in addition to the amount due under the provisions of the contract of insurance"). Therefore, there can be no recovery for vexatious refusal where there is no breach of the insurance policy. *Id*. (citing *State ex rel. U.S. Fidelity & Guaranty Co. v. Walsh*, 540 S.W.2d 137, 141-42 (Mo. App. 1976). Because the insurance policy at issue here never became

13

effective, Rothenberg cannot prove the first element of the claim for vexatious refusal and there was no breach. Accordingly, Principal is also entitled to summary judgment on Rothenberg's vexatious refusal claim.

*Negligence Claims Against Principal and Bagby*

This is not the end of the Court's analysis, however. Rothenberg's Counterclaim also asserts negligence claims against Bagby, and she asserts that Principal too was negligent, and is jointly and severally liable for Bagby's alleged negligence under principles of *respondeat superior*. Rothenberg argues that even if "some significant performance on the part of Rob necessary to trigger Principal's obligation to honor the Policy was lacking, Principal cannot seize upon the omission to avoid its obligations under the Policy, since Bagby, acting as Principal's agent, was responsible for the omission." Doc. 59 at 25-26. Principal argues that it is entitled to summary judgment on Rothenberg's *respondeat superior* claim because Bagby owed duties only to Rob, not Donna; Bagby did not breach the standard of care in any event; and Bagby was not acting as Principal's agent at the relevant time. Because Rothenberg's final claim against Principal is closely intertwined with her claims against Bagby, the Court will consider the claims together.

Bagby also asserts that he is entitled to summary judgment on Rothenberg's negligence claims against him because any duty he owed in the transaction with Rob was owed to Decedent and not to Rothenberg, the intended beneficiary, and, in any event, he did not breach the applicable standard of care. Because the issue of whether Bagby owed a duty to Donna, and not just to Rob, is dispositive of her negligence claims against both Bagby[4] and Principal, the Court

---

[4] The Court in this section refers only to Rothenberg's negligence claim against Bagby in his capacity as an insurance broker in Count III of her Counterclaim. The Court will separately address, *infra*, Rothenberg's negligence claim against Bagby in his capacity as a financial planner, asserted in Count IV.

14

will restrict its analysis to that question, and determines that Bagby did not owe any duty to Donna as the intended beneficiary of the policy.

"Negligence is a positive wrong, a breach of duty, and no person may recover damages because of the wrong save the one to whom the duty was owing." *Forck v. Prudential Ins. Co. of Am.,* 66 S.W.2d 983, 984 (1933). Under Missouri law, intended beneficiaries are not owed duties by and may not maintain negligence actions against insurance producers; Bagby's duty was owed to Rob as the owner of the policy, and not to Rothenberg as the intended beneficiary of the policy. *See State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 140-41 (Mo. 1987) (holding that beneficiaries of a life insurance policy were merely incidental beneficiaries who were not owed any duties by the agent) *Forck*, 66 S.W.2d at 984 (plaintiff lacked standing to sue even though named as beneficiary in policy application because policy was never effective and no duty was owed to her as intended beneficiary). *See also Jackson Nat'l Life Ins. Co. v. Cabrera*, 48 F. App'x 618, 619-20 (9th Cir. 2002) (holding that duty of life insurance agent was to the insured as the owner of the policy and not to the purported beneficiaries of the policy; *Smith v. Equifax Servs., Inc.*, 537 S.2d 463, 464 (Ala. 1988) ("[A] beneficiary named in a pending insurance application does not have a right to maintain an action . . . for negligently processing an insurance application.").

Rothenberg, in support of her claims, cites to cases where the intended beneficiaries of life insurance policies were allowed, in certain circumstances, to bring negligence claims against insurers and agents. *See e.g., Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W. 2d 91 (Iowa 2012) (widow brought action against insurance agent who failed to complete change of beneficiary form as requested by insured); *Parlette v. Parlette*, 88 Md. App. 628 (1991) (insured's mother could assert negligence claim against insurance agent for failure to designate her as beneficiary

15

in accordance with insured's intent); *Jones v. Hartford Life and Accident Ins. Co.*, 443 F.Supp.2d 3 (D.D.C. 2006) (putative beneficiary could bring negligence action against insurer and agent alleging that they negligently handled records establishing her beneficiary status). Relying on these cases, Rothenberg argues that even if Bagby was acting solely on behalf of Rob when procuring the policy, she, as the intended beneficiary of the Policy, should be able to recover against Bagby and Principal.

However, there is a crucial distinction between the cases cited by Rothenberg and the situation at hand. In each of the cited cases the insurance policy at issue was indisputably in full force and effect at the time of the decedent's death, and the primary issues were around whether the plaintiffs could prove that they were the intended beneficiaries of the respective policies. Here, as explained *supra*, the Policy was never in effect. The facts here are more akin to those in *Forck*. *Forck*, 66 S.W.2d at 984. In *Forck*, the plaintiff was the widow and named beneficiary in an application for life insurance submitted by the decedent that had not yet been accepted or rejected when the applicant died. *Id*. His widow sued, alleging negligence in the failure to be reasonably diligent in accepting or rejecting the application. *Id*. The court held that there was no duty owed to the person designated as beneficiary in an application for life insurance on a policy that never took effect. *Id*. The court explained that any duty owed was to the applicant, and not to his widow, and therefore, she had no right to bring an action on the policy. Here, like in *Forck*, no duty flows to the designated beneficiary of a policy that never took effect, and Rothenberg does not have a claim against Bagby for alleged breach of his duties to Rob as an insurance producer.

Summary judgment is appropriate where a party cannot proffer admissible evidence in support of each essential element of her claim. *See Celotex*, 477 U.S. at 322 ("[T]he plain

16

language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Here, Rothenberg has not establisheded that Bagby owed a duty to protect her from the alleged injury, and the Court will therefore grant Bagby's motion for summary judgment with respect to her negligence claim in Count III of her Counterclaim. Additionally, and for the same reasons, Rothenberg's *respondeat superior* negligence claim against Principal also fails as a matter of law, and Principal is entitled to summary judgment in its favor on the claims in its Complaint.

*Negligence Claim Against Bagby in his Role as Financial Planner*

Rothenberg, in Count IV of her Counterclaim, argues that Bagby owed a duty to her, and breached the same, in his capacity as the Rothenberg's financial planner, a capacity in which he had served the couple for approximately twenty years. Rothenberg asserts that Bagby, in his role of financial advisor, had a duty to her and Rob to take appropriate steps to ensure that the Principal Policy was in full force and effect before the Jackson National policy lapsed.

Rothenberg seems to be asserting that Bagby, in order to discharge his duties as their financial planner, should have advised them to obtain some sort of optional gap or bridge coverage, or otherwise ensure that Rob was not uninsured for any length of time. However, Missouri law does not impose on an insurance broker a duty to assure that the insured has continuous coverage with no gap. *Jones v. Kennedy*, 108 S.W.3d 203, 205–06 (Mo. Ct. App. 2003). Indeed, Missouri law does not impose a duty on an insurance producer to advise an insured of any particular sort of optional coverage, bridge or otherwise. *Id*. at 207 ("Missouri does not recognize a duty on the part of an insurance agent to advise customers as to their

17

particular insurance needs or as to the availability of optional coverage.") (citing *Blevins v. State Farm Fire & Cas. Co.,* 961 S.W.2d 946, 951 (Mo. Ct. App. 1998). Missouri courts have cited numerous policy reasons in support of declining to impose such a duty, including a reluctance to remove the burden on the insured to attend to his own financial needs; the knowledge of each insured regarding his or her own personal assets and ability to pay that far exceeds that of the agent; and a concern that insureds could seek coverage for a loss after it occurred by merely alleging that they would have purchased the necessary coverage if it had been offered. *See Farmers Ins. Co., Inc. v. McCarthy*, 871 S.W.2d 82, 85-86 (Mo. Ct. App. 1994). As there was no duty on the part of Bagby to inform Rob of the availability and advisability of bridge or gap coverage, it follows that Bagby could not have breached any such duty. Furthermore, to the extent Rothenberg argues that Bagby had a duty to instruct Rob to pay the premium when submitting the application so that it would immediately take effect, that argument likewise expands on what Missouri law requires. Missouri courts have held that there is no duty to monitor policies or instruct an insured to make a premium payment. *See, e.g. Matthews v. Schumacher*, 660 S.W.2d 357, 359 (Mo. Ct. App. 1983) (holding that duty of care does not extend to maintenance of policy or mandate an instruction to pay premium).

     Rothenberg argues that it does not matter whether Bagby may have met the normal duties expected of an insurance producer, because he owed them a heightened duty of care due to his special relationship with the Rothenbergs as their long-time financial planner. She argues that Bagby was "not a mere order taker who was contacted out of the blue and asked to procure a life insurance policy," but rather, he had served as their investment adviser for more than 20 years, and as such, he owed them enhanced duties concomitant with that relationship. *See* Doc. [76] at 14-15.

Missouri law recognizes that the "normal duty" of an insurance broker may expand in certain circumstances if there is a "special relationship" between the client and broker. *See Emerson*, 362 S.W.3d at 20 (internal quotations omitted); *Zeff Distrib. Co. v. Aetna Cas. & Sur. Co.*, 389 S.W.2d 789, 795 (Mo. 1965). Rothenberg cites to *Zeff* to support her argument—in that case, the court held the insurance producer defendant to a heightened standard of care because he had, over the course of many years, handled all of plaintiff's insurance concerns, and the insured had authorized the insurance producer to change insurance policies without notice or approval from the insured. *Zeff*, 389 S.W.2d at 795. However, Missouri law does not allow Rothenberg to blur the lines between insurance producer and financial planner when determining whether such a "special relationship"—with a concomitant heightened duty of care— may have existed between the Rothenbergs and Bagby. Rather, the capacity in which Bagby was acting when procuring the Policy determines the duty owed.

In *Roth v. Equitable Life Assur. Soc. of U.S.*, the court explained that the duty owed by a financial planner to a client while engaged in financial planning is separate and distinct from the duty owed by that same individual in his capacity as an insurance broker. 210 S.W.3d 253, 260 (Mo. Ct. App. 2006). In *Roth*, the defendant acted as both financial planner and insurance producer for the plaintiffs, and the court examined the duties owed by the defendant in each capacity separately and did not hold the defendant to any heightened duty because of his dual role in the plaintiffs' affairs. Here, Bagby did have a long relationship with the Rothenbergs in his capacity as financial planner. However, there is no basis in the record to conclude that Bagby was acting in his capacity as a financial planner when he procured the Policy at issue here. Additionally, there is nothing in the record to indicate that Bagby had any lengthy or in-depth involvement with the Rothenberg's insurance needs. Unlike in *Zeff*, Bagby had procured only

19

one life insurance policy for Rob, 20 years prior to the facts giving rise to the case at hand.  The Court agrees with Bagby that such limited involvement in Rothenberg's insurance needs does not give rise to anything like the level of reliance upon and duty owed by the insurance producer such as the relationship described in *Zeff*.  Accordingly, Bagby did not have a "special relationship" with the Rothenbergs with respect to their insurance requirements, and did not owe any related heightened duty of care merely because of the work he had performed in his capacity as their financial planner.  The Court finds that Bagby is entitled to judgment as a matter of law in his favor on Count IV of Rothenberg's Counterclaim.

**IT IS HEREBY ORDERED** that Defendant/Counterclaimant Donna Rothenberg's Motion for Partial Summary Judgment [Doc. 58] is **DENIED**.

**IT IS FURTHER ORDERED** that Counter Defendant Robert Bagby's Motion for Summary Judgment [Doc. 60] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Principal National Life Insurance Company's Motion for Summary Judgment on its Complaint and Defendant/Counterclaimant Rothenberg's Counterclaim [Doc. 65] is **GRANTED**.

**IT IS FINALLY ORDERED** that the parties' various Motions to Exclude Testimony [Docs. 53, 55, and 63] are **DENIED** as moot.

Dated this 4th day of January, 2022.

                /s/Jean C. Hamilton
                 JEAN C. HAMILTON
                 UNITED STATES DISTRICT JUDGE